UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD N. COOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-0756 |
| | § | |
| EQUILON ENTERPRISES, L.L.C., | § | |
| D/B/A SHELL OIL PRODUCTS US, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 14). The motion has been fully briefed. Having considered the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment should be granted.

## I.    BACKGROUND[1]

This case arises from alleged discrimination against Plaintiff Richard Nash Cook by his employer, Defendant Equilon Enterprises, L.L.C. d/b/a Shell Oil Products US ("Shell" or "Defendant"). Cook's Original Complaint alleges that Shell violated the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and 41 U.S.C. § 1981[2] through its conduct in relation to a workplace injury Cook sustained in April of 2008.

---

[1] The facts are undisputed except where indicated.

[2] Plaintiff's Original Complaint alleges that Plaintiff was "continuously and consistently treated in a differing and adverse manner due to his race," in violation of his rights under 42 U.S.C. § 1981. (Compl. ¶ VII, Doc. No. 1.) Plaintiff's counsel indicated during Plaintiff's deposition, however, that the race discrimination claim was inadvertently included in the Original Petition and agreed to withdraw the cause of action. (Cook Dep. 67-68, Doc. No. 14-1.) Based on this stipulation, summary judgment is appropriate as to this claim.

Cook was hired by a temporary agency in July 1999 to work as an Operator at Shell's Lube Plant in Galena Park, Texas. (Cook Aff. ¶ 2, Doc No. 19-2.) In January 2000, Cook became a regular employee of Shell in the Shipping Department where he was responsible for loading trucks. (*Id.*) Cook was approximately 52 years old when Shell hired him directly as an employee. (Cook Dep. 25:19-25.) Roughly ten months later, Cook was transferred to the Grease Department where he eventually became a Lead Operator. (*Id.* at 28:4-9, 28-29.) Cook remained in the Grease Department until it closed in approximately 2005. (Cook Dep. 29:8-17.) After the closure of the Grease Department, Cook was transferred to the Pail Line where he filled pails with motor oil. (Cook Aff. ¶ 3.) Cook worked on the Pail Line for approximately a year and a half until he sustained a work place injury to his left shoulder. (Cook Dep. 30.) Cook's injury required surgery and he remained off of work for just over one year from December 2006 to January 2008. (Cook Dep. 30-31). Upon returning to work in January 2008, Cook began working on the Quart Line as an Operator. (Cook Dep. 31-32). After approximately one month, Cook was transferred to the Gallon Line where he continued to work as an Operator. (Cook Aff. ¶ 3.)

On the morning of April 4, 2008, at approximately 6:30 a.m., after roughly 20 minutes of operating the case erector machine on the Gallon Line, Cook sustained an injury to his right shoulder. (Cook Dep. 37-38.) Cook immediately shut down his machine and reported the injury to his supervisor, Scott Smerek. (Cook Aff. ¶ 4.) Cook advised Smerek that he was experiencing a lot of pain as a result of his shoulder injury. (*Id.*) Smerek told Cook that he would send another employee down to Cook's line to relieve Cook of his duties. (Cook Dep. at 39:4-5.) The relief employee arrived shortly

thereafter and Cook spent roughly five to ten minutes training the employee to continue the line's operation.  (*Id.* at 42:23-25, 43:1-21.)  Cook then watched the relief employee run the line for about 30 minutes because Smerek had instructed him to make sure it was operating properly.  (*Id.* at 44:12-19.)

Cook then went to find Smerek to tell him that he was still experiencing pain and needed medical attention.  (*Id.* at 44:20-25, 45:1-4.)  During their meeting, Smerek allegedly told Cook, "[P]eople at your age have a tendency of being injured more often than others, and I don't know what to do, I've never been in this situation before." (*Id.* at 45:4-8.)  Cook claims that he advised Smerek that Smerek needed to get him to "Shell or some medical place" to have a doctor look at his shoulder.  (*Id.* at 45:10-13.)  Smerek told Cook that he would "get with [Cook] later on" and instructed Cook to return to his work area.  (*Id.* at 45: 18-20.)  Cook complied with Smerek's instructions and remained at his work station for approximately 30 minutes observing the relief employee who was running the line.  (*Id.* at 45:2-11, 46:15-18.)  Cook then left his station to go speak to Smerek about his injury again.  (*Id.* at 45:24-25.)  Cook testified that, during their second discussion, Smerek apologized for making the comment about Cook's age, but then proceeded to make another age-related comment, stating "People [Cook's] age have a tendency of being hurt more often on the job." (*Id.* at 48:17-24, 49:21-23.)  Smerek also told Cook to stay down in his work area and repeated that he would "get with [Cook] when he [could]." (*Id.* at 48:10-13.)

Cook returned to his work station and waited for about 30 minutes before calling his wife to come pick him up.  (*Id.* at 50:2-4.)  Before his wife arrived, Cook called Smerek and informed Smerek that he had called his wife to take him to the doctor

because he needed medical attention. (*Id.* at 50: 5-15.) Smerek informed Cook that his wife could not take him to the doctor, and later, when Cook's wife arrived, Smerek informed her that only a Shell employee could take Cook to the doctor for his injury. (*Id.* at 50: 21-25.) Cook's wife then left the Shell facility. (*Id.* at 51:2-3.) At approximately 12:30 p.m., Smerek took Cook to the Shell medical facility at Shell's Deer Park Refinery. (*Id.* at 52:7-17.) Smerek waited for Cook in the waiting room during Cook's examination by a doctor, which lasted approximately 30 minutes. (*Id.* at 53:2-17.) Smerek then drove Cook back to the Lube Plant where Cook changed his clothes and drove himself home. (*Id.* at 54-55.) The next week, Cook contacted Smerek to inform him that he could not make it to work because his shoulder pain had intensified substantially and he was going to see a doctor. (Cook Aff. ¶ 7.) Cook has been on medical leave from Shell since April 2008.

Following his injury, Cook applied for and began receiving workers' compensation benefits. In September of 2008, Cook underwent surgery on his right shoulder to repair a torn rotator cuff and labrum. (*Id.* at 102:3-13.) In February 2009, following a hearing before the Texas Workers' Compensation Board ("TWCB"), Cook's workers' compensation benefits were terminated. (*Id.* at 69:12-13.) Based on the termination of his workers' compensation benefits, pursuant to its policy, Shell changed Cook's leave status from occupational to non-occupational. (*Id.* at 69-70; Carter Aff. ¶ 5.) Under Shell's policy, employees who are on non-occupational leave must pay for their own health insurance. (*Id.*) Although Cook has disputed the classification of his medical leave and the resulting requirement that he pay for his own health insurance, Cook does not allege that the termination of his benefits or the health insurance

4

requirement are related to his age.  (*Id.* at 70-71.)  After his leave was reclassified, Cook

applied for and began receiving long-term disability benefits ("LTD").  (*Id.* at 117-118.)

In November 2009, Cook's doctors released him to return to work on a light duty

basis.  (*Id.* at 71:16-20.)  At the time, according to Shell, there were no light duty

positions available at the Lube Plant and Cook was told that he could return to work only

with a full release.  (*Id.* at 72: 2-18.)  At the time of his deposition in December 2009,

Cook was continuing to receive LTD benefits and recuperating from his injuries.  At that

time, Cook had not been cleared by his doctors to lift items weighing more than ten

pounds.  (*Id.* at 80-81.)  Cook anticipated obtaining a full release sometime in 2010 and

expects to be able to return to work at Shell.  (*Id.* at 72-73.)

## II.   STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56

requires the Court to determine whether the moving party is entitled to judgment as a

matter of law based on the evidence thus far presented.   *See* FED. R. CIV. P. 56(c).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).

A genuine issue of material fact exists if a reasonable jury could enter a verdict

for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th

Cir. 2000).  This Court must view all evidence in the light most favorable to the non-

moving party and draw all reasonable inferences in that party's favor.  *Id.*  Hearsay,

conclusory allegations, unsubstantiated assertions, and unsupported speculation are not

competent summary judgment evidence.  FED. R. CIV. P. 56(e)(1); *see also Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). Indeed, to survive a motion for summary judgment that is properly made and supported, the opposing party's response cannot rely merely on allegations or denials in the pleadings, but must point to specific facts showing a genuine issue for trial. *See* FED. R. CIV. P. 56(e)(2).

## III.   COOK'S AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIMS

### A. Disparate Treatment

The ADEA prohibits employers from discriminating against employees on the basis of age. A plaintiff may prove the existence of intentional discrimination either through direct or circumstantial evidence.[3] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Discrimination claims lacking sufficient direct evidence are analyzed according to the burden-shifting framework first established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> *McDonnell Douglas* instructs that the plaintiff must first establish a prima facie case of discrimination. Once the plaintiff presents a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory

---

[3] There is some direct evidence of age-related bias on Smerek's part, as evidenced by his comments on the day of Cook's injury. A remark is considered probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker. *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003). In this case, Smerek's age-related comments were made in April of 2008 on the day of Cook's injury. As discussed *infra*, Shell's only arguably adverse employment action against Cook, the reclassification of his leave status, took place some time after February 2009. Not only had significant time passed since Smerek's age-related comments, but it was the Human Resources department, not Smerek, who made the leave status decision. (Carter Aff. ¶ 3; Cook Dep. 75-76.) Cook has presented no evidence that Smerek was involved in or had influence over the decision to reclassify his benefits. In light of the significant passage of time and the completely different decision-maker involved in Cook's leave determination, Smerek's age-related comments are not by themselves sufficient direct evidence of discrimination to allow Cook to withstand summary judgment. Despite the lack of sufficient evidence of discrimination to shift the burden of persuasion immediately to Shell, Cook's claim is also appropriately evaluated under the *McDonnell Douglas* burden-shifting framework.

reason for the questioned employment action. If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003) (internal citations omitted).

To survive summary judgment on his claim of discrimination on the basis of age, Cook must raise a genuine issue of material fact on each element of the prima facie case of discrimination. *Johnson v. Louisiana*, 351 F.3d 616, 621-22 (5th Cir. 2003). The prima face case requires a plaintiff to demonstrate that: 1) he is a member of a protected class; 2) he was qualified for the position in question; 3) he suffered an adverse employment action; and, 4) was replaced by a younger worker or otherwise treated less favorably than similarly situated persons outside the protected class. *Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

It is undisputed that Cook, who was over sixty years old when the relevant events occurred, is a member of the class protected by the ADEA – employees over 40 years of age. Cook was clearly qualified for the Operator position in which he was employed at Shell. It is less clear, however, whether Cook suffered an adverse employment action. Cook's Original Petition alleges that he was "forced to resign from his post by the Defendant" and that he "was replaced by an individual that was not in the protected class of persons over forty (40) years of age." (Compl. ¶ VI.) There is no competent summary judgment evidence, however, that Shell ever forced Cook to resign. In fact, Cook testified that he was never fired, demoted, or wrongfully disciplined by Shell. (Cook Dep. 68:1-18.) Uncontroverted evidence demonstrates that Cook is currently an active employee of Shell who is on medical leave. (Carter Aff. ¶ 3, Doc. No. 14-2.)

Although Cook does not raise the issue in his Original Petition or in his Response to Shell's Motion for Summary Judgment, Shell arguably took an adverse action against Cook when it reclassified his leave status from occupational to non-occupational upon the TWCB's determination that Cook was fit to return to work. Indeed, pursuant to Shell's policy, this reclassification resulted in Cook being required to pay for his own health insurance.

The Fifth Circuit has held that an employment action that "does not affect job duties, compensation, or benefits," is not an adverse employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quotation marks and internal citations omitted). Indeed, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."[4] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (per curiam) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (internal quotations omitted). Because Shell's reclassification of Cook's leave status resulted in a material change to his health benefits, the decision appears to qualify as an adverse employment action under the ADEA.

The Court need not determine whether Shell's conduct constituted an adverse employment action, however, because there is no evidence that the reclassification occurred in a manner that gives rise to an inference of age discrimination. Rather, the uncontroverted evidence in the record shows that Shell's leave policy was consistently applied to employees of all ages. In the absence of evidence that Cook was treated less

---

[4] In his Response, Cook appears to suggest that Smerek's age-related comments and requests that Cook return to his work station on the day of Cook's injury constitute adverse employment actions. Smerek's conduct, albeit apparently insensitive, does not constitute an adverse employment action under the ADEA as interpreted by the Fifth Circuit.

favorably than other similarly situated individuals outside his protected class with regard to his leave status, the final element of the prima facie case has not been satisfied and summary judgment is therefore appropriate.

### B.  Hostile Work Environment

Cook's Original Petition also alleges that Cook was subject to "hostility and verbal assaults, targeted at his age." (Compl. ¶ VI.)  Although the Fifth Circuit has not specifically held that a hostile work environment claim is cognizable under the ADEA, the Court assumes for purposes of this motion that such a cause of action is available. *McNealy v. Emerson Elec. Co.*, No. 04-30305., 121 Fed. Appx. 29, 2005 WL 86503, 34 n.1 (5th Cir. Jan. 17, 2005).

To state a hostile work environment claim, a plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).  "For harassment to affect a term, condition, or privilege of employment it must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001) (internal quotations omitted).  In evaluating whether a work environment is hostile, all circumstances are considered, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

9

In this case, Cook worked for Shell for nearly a decade before the alleged verbal assaults took place in this case.  Indeed, the only two age-related comments about which Cook testified occurred on the same day in April 2008 when he injured his shoulder. Surely, two age-related comments over a nearly ten year period is insufficient to raise a question of fact as to whether Cook was subject to severe or pervasive harassment related to his age.  Thus, summary judgment is appropriate with respect to Cook's hostile work environment claim.

## IV.   COOK'S AMERICAN'S WITH DISABILITIES ACT CLAIM

The ADA prohibits discrimination by private employers against any qualified individual with a disability.  A disability is defined as: 1) a physical or mental impairment that substantially limits one or more major life activities, 2) a record of such an impairment, or 3) being regarded as having such an impairment.   42 U.S.C. § 12102(4)(A), (B), (C).

### A.  Whether Cook Was Disabled Under the ADA

The United States Supreme Court has held that an impairment rises to the level of a disability only if its impact is "permanent or long term."  *Toyota Motor Mfg. KY Inc. v. Williams*, 534 U.S. 184, 197 (2002).   Accordingly, under applicable Fifth Circuit precedent, temporary, non-chronic impairments generally do not constitute disabilities. *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047 (5th Cir. 1998).  For example, the Fifth Circuit has found that injuries requiring surgery and recuperation are not disabilities even when they cause extended absences from work.  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996) (involving ankle afflictions requiring surgery).

Since Supreme Court's decision in *Toyota Motor*, however, Congress passed the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), which became

effective on January 1, 2009.   Pub. Law 1110-325, § 8, 122 Stat. 3553 (2008).   The ADAAA rejected what Congress perceived to be the Supreme Court's unduly restrictive approach to analyzing whether a plaintiff suffered from a "disability" for purposes of the ADA.   Thus, in the ADAAA, Congress mandated that the definition of disability is to be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted" by the law, and provided specific guidance as to the meaning of "substantially limited" and "major life activities."   42 U.S.C. § 12102(4)(A).   Of course, this substantially modified standard of interpretation potentially impacts the Court's analysis of whether Cook had a disability within the meaning of the ADA.   It is therefore important to assess whether the ADAAA applies to the conduct in this case.

In *Carmona v. Southwest Airlines*, the Fifth Circuit declined to "find that Congress intended the ADAAA to apply retroactively."   604 F.3d 848, 857 (5th Cir. 2010) (citing *EEOC v. Agro Distribution, LLC,* 555 F.3d 462, 469 n. 8 (5th Cir. 2009)).   Any conduct that occurred prior to January 1, 2009, therefore, is governed by the ADA and the case law interpreting "disability" prior to the ADAAA, even though Cook's claim might fare differently if the ADAAA were applied.   On the other hand, events that occurred after the ADAAA's effective date must be evaluated in light of Congress's significant alterations to courts' "disability" inquiry.

Most of the events in this case, including Cox's injury, occurred before January 1, 2009.   The only potentially adverse employment action in this case, Shell's reclassification of Cook's leave status, however, took place in February 2009.   The case law instructs that the relevant moment for assessing the existence of disability is the time of the adverse employment action.   *See EEOC v. Chevron Phillips Chemical Co. LP*, 570

F.3d 606, 618 (5th Cir. 2009).   Thus, in evaluating whether Cook was disabled in February 2009, the Court must apply the law as modified by the ADAAA.

The Equal Employment Opportunity Commission has not yet completed the rulemaking process to amend the section of the Code of Federal Regulations dedicated to interpreting the ADA.  The available guidance regarding the application of the ADAAA suggests that Cook very well may be disabled under the statute as amended, which includes "lifting" as a major life activity.  42 U.S.C. § 12102(2)(A).  Moreover, the ADA instructs that *Toyota Motor* "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress."  Pub. Law 1110-325, § 2(a)(7), 122 Stat, 3553 (2008).  As discussed *infra* in Section IV.B., however, it is unnecessary to reach the question of whether Cook is disabled within the meaning of the amended ADA because he has failed to satisfy the remaining elements of a prima facie case of disability discrimination.

### B.  Prima Facie Case of Disability Discrimination

To establish discrimination based on disability, Cook must demonstrate that: (1) he was disabled during the relevant time period; (2) he was nonetheless qualified to do the job; (3) an adverse employment action was taken against him; and (4) that he was replaced by or treated less favorably than non-disabled employees.  *See Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).

Assuming that Cook was disabled in February 2009 and that Shell took an adverse action against him by reclassifying his leave status, Cook has failed to satisfy the final element of the prima facie case.  Indeed, as with his ADEA claim, Cook has pointed to no evidence that he was treated less favorably than other non-disabled employees with

regard to his leave status and the requirement that he pay for his health care while on non-occupational leave. Shell has provided competent summary judgment evidence that the decision to change Cook's leave status was made in response to the TWCB's decision to terminate his workers' compensation and that such a reclassification was Shell's standard procedure. The uncontroverted evidence also suggests that the accompanying requirement that Cook make health insurance payments while on non-occupational leave was a standard policy. Cook has pointed to no evidence that Shell has not consistently applied these policies to all Shell employees regardless of disability. Thus, because Cook has not satisfied the final element of the prima facie case, even if he suffered from a disability in February 2009, summary judgment is appropriate.

## V.   CONCLUSION

Because Cook has failed to make out a prima facie case for both his ADEA and ADA claims, Defendants' Motion for Summary Judgment (Doc. No. 14) is hereby **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 26 day of October, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE